**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DAVID P. HAYES, TRUSTEE FOR THE PAUL B. HAYES FAMILY TRUST, DATED APRIL 30, 2010 | ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DAVID L. BERNHARDT, in his official capacity as Secretary of the United States Department of Interior;[1] UNITED STATES BUREAU OF INDIAN AFFAIRS; DARRYL LaCOUNTE, in his official capacity as the Director of the United States Bureau of Indian Affairs; WARRIOR EXPLORATION & PRODUCTION, LLC; PERFORMANCE GROUP, LLC, | ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

Case No. 16-CV-00615-JED-FHM

**OPINION AND ORDER**

Before the Court is the Second Motion to Dismiss (Doc. 22) filed by defendants

Warrior Exploration & Production, LLC and Performance Group, LLC (the "non-federal

defendants").[2]  The Court considered the plaintiff's response (Doc. 25), defendants' reply

(Doc. 26), and arguments at the hearing conducted on the motion.  In their dismissal

---

[1]     Effective April 11, 2019, David L. Bernhardt became the Secretary of the Department of Interior.  Pursuant to Federal Rule of Civil Procedure 25(d), Secretary Bernhardt shall be substituted as the defendant in place of the prior Secretary of Interior.  Likewise, Darryl LaCounte is now the Director of the Bureau of Indian Affairs and is substituted for his predecessor.

[2]     The non-federal defendants adopted their earlier dismissal motion, Doc. 14. (*See* Doc. 22 at 1-2).

motion, the non-federal Defendants request dismissal based upon three separate grounds. First, they argued that a ruling would be improper while a similar case, *Hayes I*, Case No. 14-CV-495-GKF-PJC, was on appeal.   Second, they contend that the Osage Minerals Council (OMC), which is the lessor and the entity that is legally authorized to make decisions regarding the mineral rights which the United States holds in trust for the benefit of the Osage Tribe, is a required and indispensable party who may not be joined due to its sovereign status.   Third, they argue that Hayes does not have standing.

## I.    Background

The plaintiff, David Hayes, brings this case under the Administrative Procedures Act (APA) seeking judicial review of the Bureau of Indian Affairs' (BIA) approval of oil and gas leases and associated drilling permits affecting real property owned by Hayes in Osage County.  Hayes alleges that the BIA's approval of the lease and permits violated the National Environmental Policy Act (NEPA).

Hayes is the owner of approximately 475 acres of land located in Osage County. He lives on this land with his wife and daughter.  The property is divided into three different tracts.  On February 16, 2012, the Osage Nation, which controls the mineral rights to the land, entered into a lease (Lease 22411) with Chaparral Energy, LLC that covered Tract One.  This lease was approved by the Superintendent of the Osage Agency within the BIA, which manages the Osage Nation's mineral estate.  Chaparral submitted Applications for Permit to Drill (APDs) for six wells and one salt water disposal well pursuant to Lease 22411.  All of these were approved by the BIA, and the plaintiff alleges that the approval was made without complying with NEPA.

The OMC and Chaparral also entered into a lease (Lease 22770) covering Tract Two.  This lease was approved on February 6, 2013.  Chaparral submitted APDs pursuant to Lease 22770, which were all approved by the Osage Agency on April 29, 2014.  Chaparral submitted an amended APD for one well (Black Dog's Band #2-36).  The amended APD moved the well a hundred feet to the west.  The amended APD was approved by the Osage Agency on June 11, 2014.  The plaintiff alleges those approvals were in violation of NEPA.

In 2014, Hayes filed *Hayes I* in order to challenge Lease 22770 and the drilling permits under NEPA. While *Hayes I* was pending, Chaparral began marketing the leases. Lease 22411 and 22770 were purchased on or about August 31, 2015 by Warrior Exploration.  On or about September 1, 2015, Chaparral and Warrior Exploration entered into an Interim Operating Agreement designating Performance Group, LLC as operator of the Leases.  Performance has been working the wells on Hayes's property.  People come onto Hayes's property almost every day to check the wells and come three or four times a week to pick up oil.  New wells have recently been staked on Hayes's property.

In *Hayes I*, Judge Frizzell denied the OMC's motion to dismiss based upon the case proceeding without an indispensable party and the judge ruled in favor of the plaintiff on the merits.  The OMC appealed the denial of its dismissal motion, and the United States appealed Judge Frizzell's decision on the merits.  While the appeals were pending, the BIA vacated the approvals of Lease Nos. 22411 and 22770, but retroactively approved the leases pursuant to a new analysis.  The United States then voluntarily dismissed its appeal on the merits, and the OMC moved to dismiss its appeal as moot.  The Tenth Circuit granted the

3

OMC's request to dismiss its appeal as moot and remanded the case to the district court with directions to vacate its previous orders on the merits. The Tenth Circuit determined that, because the BIA had retroactively approved the leases based on a new NEPA analysis, the original approval was superseded, and so the case was moot.

In this case, Hayes claims that the approval of the leases and of the wells violated NEPA. He further argues that there are deficiencies in the Programmatic Environmental Assessment for Leasing Activities (Leasing PEA), Finding of No Significant Impact (FONSI), and Determination of NEPA Adequacy (DNA), which the BIA used to justify its decision to retroactively approve the leases.

## II.   Discussion

### A.   *Hayes I* has been decided.

The non-federal defendants previously argued that the case should be dismissed or stayed pending the appeal of *Hayes I*. However, *Hayes I* has now been decided. The Tenth Circuit determined that, because the BIA had retroactively approved the leases based on a new NEPA analysis, the original approval was superseded, and so the case was moot. The defendants represent that their first argument for dismissal is no longer applicable and they no longer wish to pursue that argument. Accordingly, the Court will not further consider that argument.

### B.   Rule 19 analysis

Under Rule 19 of the Federal Rules of Civil Procedure, a party is an indispensable party if "(A) in that person's absence, the court cannot accord complete relief among existing parties; or, (B) that person claims an interest relating to the subject of the action

and is so situated that disposing of the action in the person's absence may" either "(i) as a practical matter impair or impede the person's ability to protect the interest; or," "(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1). A party who fulfills either (A) or (B) is thus a required party and must be joined if feasible. "The inquiry . . . is mainly one of prejudice." *Grice v. CVR Energy, Inc.*, 921 F.3d 966, 969 (10th Cir. 2019). "If 'one or more parties will be unfairly prejudiced by dismissing' a defendant, the 'court must dismiss the case in its entirety for lack of jurisdiction.'" *Id.* (quoting *Ravenswood Inv. Co., L.P., v. Avalon Corr. Servs.*, 651 F.3d 1219, 1226 (10th Cir. 2011).

Where a required party cannot be joined, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). The non-federal defendants argue that the OMC fulfills both criteria (A) and (B) under Rule 19(a)(1) and is a required party without which this case should not proceed.

### 1. OMC is a required party.

Here, because the OMC is part of the Osage Nation, and thus possesses sovereign immunity, its joinder is not feasible. The Court will therefore consider whether the OMC is a required party and, if so, whether it is indispensable. The non-federal defendants argue that the OMC has an interest in this case for both economic and sovereignty reasons, rendering it a required party. First, they argue that it "is a fundamental principle that 'in an action to set aside a lease or a contract, all parties affected by the determination of the action are indispensable.'" (Doc. 14 at 5, citing *Jicarilla Apache Tribe v. Hodel*, 821 F.2d

5

537, 540 (10th Cir. 1987)).  Second, they argue that the "OMC has collected value from the leases at issue here, performed and planned government functions in reliance thereon, and its members have survived in part from the operations for over 100 years.  The OMC's interests related to this action are significant, consistent, and predictable."  (Doc. 14 at 6).  Also, they argue that invalidating "these leases will necessarily disrupt the flow of the royalties, taxes, employment incomes, and economic multiplier effect benefits the OMC will otherwise realize."  (Doc. 14 at 8).  Furthermore, they argue that the OMC has a sovereignty interest because this "litigation threatens to impair the OMC's sovereign capacity to negotiate contracts and, in general, to govern the Osage Mineral Estate."  (Doc. 14 at 7).

In response, Hayes argues that the OMC will not have its interests impaired for two reasons.  First, he argues that "a proposed lease is legally ineffective until such time that the Superintendent complies with NEPA and provides a valid approval. . . . Accordingly, this lawsuit does not infringe upon the OMC's right to negotiate, sign or submit the proposed lease for approval."  (Doc. 25 at 6).  Second, Hayes argues that the cases cited for the OMC being a required party do not apply because none "of those cases involves a split mineral estate with an innocent landowner who is not a party or signatory to the lease or contracts. . . . None of the cases cited . . . has weighed the alleged sovereign interests of the tribe against the rights of the innocent landowner."  (Doc. 25 at 6).  He also argues that one of those cases in particular, *Republic of the Philippines v. Pimentel*, 553 U.S. 851 (2008), is distinguishable from the facts in this case because it did not involve a claim under

the Administrative Procedures Act, had no other party who could represent the interests of the absent party, and involved the possibility of an alternative forum.  (Doc. 25 at 7).

Under the facts, the OMC has an interest that renders it a required party.  The standard under Rule 19(a)(1)(B) references only "an interest relating to the subject of the action."  Although a decision in favor of Hayes would not technically invalidate the leases, the result is essentially the same.  The OMC has an interest in seeing that the leases are not only upheld but also allowed to be in full effect.  A decision invalidating the approval of the leases would certainly "as a practical matter impair or impede" the OMC's ability to protect its interests in seeing the leases carried out.

Additionally, although Hayes points out differences between the cases cited in favor of the OMC having an interest and being required and the case at hand, this court finds those differences to be irrelevant, at least in relation to whether or not the OMC has an interest.  The rule established by those cases, that a party to a contract or lease is required when a contract or lease could be invalidated, presumably still applies when an "innocent landowner" seeks potential invalidation.  Therefore, this court sees no reasons why cases like *Jicarilla Apache Tribe*, 821 F.2d 537, should not apply.  Furthermore, Rule 19(a)(1)(B) makes no reference to a weighing of interests.  The only question under that rule is whether the OMC has an interest or not, not whether Hayes's own interest outweighs that of the OMC.  The OMC is a required party based on the foregoing.

Even if the OMC would ordinarily be required, the Tenth Circuit has held that a tribe is not required to be a party if the governmental defendants have an interest that is "substantially similar, if not identical, to the Tribe's interests."  *Kansas v. United States*,

249 F.3d 1213, 1227 (10th Cir. 2001).  Therefore, the Court must determine whether or not the interests of the BIA are substantially similar to that of the OMC.

The movants argue that the BIA cannot represent the interests of the OMC because the United States does not have the same interests in maintaining Osage sovereignty or in the economic development of the Osage reservation. They cite *Enterprise Management Consultations, Inc. v. United States ex. rel. Hodel*, 883 F.2d 890, 894 (10th Cir. 1989).  In that case, the Tenth Circuit held that a "Tribe's interest here in its sovereign right not to have its legal duties judicially determined without consent is an interest which the United States' presence in this suit cannot protect. This case is therefore distinguishable from those in which the United States initiates suit on behalf of a tribe and adequately represents the tribe's interest as a plaintiff . . . a situation which does not implicate the tribe's right not to be sued without consent."  *Id.*

Movants further argue that the United States does not share an economic interest with the OMC and that their interests are in conflict with one another.  They argue that it is the OMC's lease, the OMC's mineral rights, and the OMC's revenue that is threatened by this lawsuit, not those of the United States.  Further, they argue that there has been more than fifteen years of continuous litigation between the United States and the OMC over management of the Osage Mineral Estate and related regulatory issues.

In response, Hayes contends that the United States does have substantially similar interests.  He makes two arguments as to why.  First, he argues that "the salient issue in this case is the propriety of the Superintendent's decision to approve the lease and drilling permits." (Doc. 25 at 7).  Since the Superintendent is a government official, Hayes argues

that the United States shares the OMC's interests.  Second, Hayes argues that, as the trustee of the Osage Mineral Estate, the United States has a legal obligation to represent the OMC's interests.

It does not appear that the United States can represent the OMC in this case.  The Tenth Circuit has held in *Manygoats v. Kleppe*, 558 F.2d 556, 558 (10th Cir. 1977), that the federal government will generally be an inadequate representative of a tribe in a NEPA case because the government must "further the national objectives declared by NEPA," but the "national interest is not necessarily coincidental with the interest of the Tribe."  As this is a NEPA case, it does not appear that the United States cannot fully represent the interests of the OMC.  Accordingly, the OMC is a required party under Rule 19.

### 2. OMC cannot be joined

Ordinarily, upon finding that a party is required, a court will order the party to be joined to the case.  However, the OMC has sovereign immunity, such that it cannot be joined in this suit.  No party disputes this.

### 3. The case should proceed in equity and good conscience

If it is not feasible to join a required party, Rule 19(b) instructs the court to "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Four factors are to be considered: "(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether

the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b).  The rule does not assign relative weights to these factors.  Therefore, how much importance to assign to each factor in any particular case is a determination to be made by the court.

### a.     Potential prejudice to OMC

The Tenth Circuit has held that "the prejudice inquiry under Rule 19(b) 'is essentially the same as the inquiry under Rule 19(a) . . . into whether continuing the action without a person will, as a practical matter, impair that person's ability to protect his interest."' *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1291 (10th Cir. 2003), citing *Enter. Mgmt. Consultants*, 883 F.2d 890, 894 n. 4 (10th Cir. 1989). Continuing the case could impair the OMC's ability to protect its interest.

### b.     Lessening or avoiding prejudice to the OMC

Hayes argues that if "the Court were to invalidate the Superintendent's approvals, the Court could remand to the Osage Agency for further proceeding to permit the Agency to conduct the necessary NEPA analysis in order to provide a valid approval."  (Doc. 25 at 9).  Hayes argues that this factor therefore supports proceeding.  The court agrees.

### c.     Possibility of an adequate judgment

The Tenth Circuit has held that this "factor is intended to address the adequacy of the dispute's resolution.  The concern underlying this factor is not the plaintiff's interest 'but that of the courts and the public in complete, consistent, and efficient settlement of controversies,' that is, the 'public stake in settling disputes by wholes, whenever possible.'"

*Davis ex rel. Davis*, 343 F.3d 1282, 1293, citing *Provident Tradesmens Bank & Trust Co.*
*v. Patterson*, 390 U.S. 102 (1968).

The non-federal defendants argue that this factor supports dismissal because the
OMC would not be bound by the court's decision.  Hayes argues that a judgment related
to the propriety of the Superintendent's approvals would be sufficient to resolve this
dispute.  Hayes further argues movants failed to articulate any possible further litigation.

That the OMC would not be bound by the decision of this court is not relevant when
the relief Hayes is seeking concerns actions of the named defendants.  The OMC having
an interest in this case does not change that Hayes is seeking relief only from named
defendants.  Further, that the OMC has a sovereignty interest is one of the factors which
must be weighed by this court, not an automatic indication of the need for dismissal.
Finally, Hayes correctly notes that no further possible litigation has been identified by the
non-federal defendants.  For these reasons, this court finds that the third factor supports the
case proceeding.

### d.  Lack of an adequate remedy if the case were dismissed

If this case is dismissed, Hayes will have no other means to challenge the alleged
NEPA violations.  Movants argue that Hayes not having an adequate remedy if this case is
dismissed is a less important factor than the sovereignty of the OMC.  Even assuming the
court accepts this argument, it does not change the fact that Hayes lacks a means for
adequate remedy, so this factor by itself supports proceeding.

### e.  The factors overall

Considering the foregoing factors, the Court finds that, in equity and good conscience, the action should proceed among the existing parties.  Such a finding is consistent with the Tenth Circuit's holding in *Manygoats*,  558 F.2d at 558.  The relevant facts in *Manygoats* bear similarities to the facts here.  In *Manygoats*, seventeen members of the Navajo Tribe sought to enjoin the performance of a mining agreement between the Navajo Tribe and Exxon Corporation.  The agreement had to be approved by the Secretary of the Interior, and the members based their claim on the alleged inadequacy of the EIS required under NEPA.  The Tenth Circuit reversed the district court's decision to dismiss the case.  The Tenth Circuit concluded that "[d]ismissal of the action for nonjoinder of the Tribe would produce an anomalous result.  No one, except the Tribe, could seek review of an environmental impact statement covering significant federal action relating to leases or agreements for development of natural resources on Indian land. . . . We find nothing in NEPA which excepts Indian lands from national environmental policy." *Id.* at 559.

The reasoning of *Manygoats* is applicable here.  Although the OMC has an interest in the validity of the leases, it still remains that Hayes is seeking relief against the government, not the OMC.  Hayes seeks only to invalidate the approval of the leases, not the leases themselves, and Hayes would be left without an adequate remedy if this action is dismissed.  In equity and good conscience, this action should not be dismissed, but should proceed.

C.     Standing

The non-federal defendants further argue that the case should be dismissed for lack of standing, for the reason that Hayes's grievance allegedly does not fall within the zone of interests protected by the statutory provisions and Hayes has allegedly failed to allege an injury in fact.  (Doc. 14 at 15).  NEPA itself "does not contain a private right of action for those seeking to enforce its procedural requirements, [so] a plaintiff must rely on the Administrative Procedures Act as the basis for [his] action and, therefore… a plaintiff must establish [that he] is 'adversely affected or aggrieved . . . within the meaning of a relevant statute.'"  *Committee to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 448 (10th Cir. 1996), (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 883 (1990)).

The non-federal defendants argue that "Hayes merely alleges that his real property has been 'affected.'"  (Doc. 14 at 15).  They argue that this is insufficient because Supreme Court precedent requires plaintiffs to state an "injury in fact."  In response, Hayes argues that the "injury caused by a violation of NEPA is the increased risk of actual, threatened or imminent environmental harm."  Doc. 25 at 12.

The increased risk of environmental harm due to uninformed agency decision-making in and of itself constitutes an injury.  The Supreme Court has held that the "injury of an increased risk of harm due to an agency's uninformed decision is precisely the type of injury NEPA was designed to prevent.  Thus, under NEPA, an injury of alleged increased environmental risks due to an agency's uninformed decision making may be the foundation for injury in fact under Article III."  *Rio Hondo*, 102 F.3d at 448-449.  Citing *Rio Hondo*, the Tenth Circuit has held that an "injury under the NEPA results 'not from the agency's

13

decision, but rather from the agency's uninformed decisionmaking [*sic*].'" *Sierra Club v. U.S. Department of Energy*, 287 F.3d 1256, 1265 (10th Cir. 2002).

The analysis does not "require the plaintiff to show with certainty, or even with a substantial probability, the results of agency action." *Rio Hondo*, 102 F.3d at 452. Hayes has identified several ways in which his property could be harmed: reduced air quality, reduced water resources due to their need in drilling, soil erosion, harm from hydraulic fracturing, earthquakes caused by hydraulic fracturing, and further contribution to climate change. (Doc. 47 at 18-23). Finally, a plaintiff must show that the increased harms injures his concrete interests. He does so "by demonstrating either a geographical nexus to or actual use of the site of agency action." *Sierra Club*, 287 F.3d at 1265. Given that the site of agency action is Hayes's own property, he clearly fulfills this requirement. Hayes has standing.

## III.   Conclusion

For the foregoing reasons, the dismissal motion of Warrior Exploration & Production, LLC and Performance Group, LLC (Doc. 22) is **denied**. Due to the passage of time, the parties shall file a joint status report by **November 30, 2020** to inform the Court of any developments or authorities that may not have been previously provided. The Court will thereafter determine the merits of the APA claim.

SO ORDERED this 2nd day of November, 2020.

_____
JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

14