## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DAVID P. HAYES, TRUSTEE FOR THE PAUL B. HAYES FAMILY TRUST, DATED APRIL 30, 2010,** | |
| **Plaintiff,** | |
| **v.** | **4:16-cv-00615-JAR-FHM** |
| **DEB HAALAND, in her official capacity as Secretary of the United States Department of the Interior, the UNITED STATES BUREAU OF INDIAN AFFAIRS, DARRYL LACOUNTE, in his official capacity as Director of the United States Bureau of Indian Affairs, WARRIOR EXPLORATION & PRODUCTION, LLC, and PERFORMANCE GROUP, LLC,** | |
| **Defendants.** | |

### OPINION AND ORDER

Jane A. Restani, Judge[*]:

Before the court is an action brought by the Paul B. Hayes Family Trust, Dated April 30, 2010 ("Hayes"), against Deb Haaland, Darryl LaCounte, and the United States Bureau of Indian Affairs (collectively, "the government") and Warrior Exploration & Production, LLC, and Performance Group, LLC (collectively, "non-federal defendants"). Previously, the court found that the defendant United States

---

[*] Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

Bureau of Indian Affairs ("BIA") violated the National Environmental Policy Act ("NEPA") when it failed to conduct site-specific analysis while preparing a Leasing Programmatic Environmental Assessment ("Leasing PEA") and subsequent Finding Of No Significant Impact ("FONSI"), and while retroactively approving two leases covered by the Leasing PEA and FONSI. Op. and Order, ECF No. 99 (Nov. 7, 2023); Hayes v. Haaland, 2023 WL 7360856 (N.D. Okla. Nov. 7, 2023) ("Hayes II"). Specifically, the court found the Leasing PEA and FONSI, and the two leases retroactively approved under the Leasing PEA and FONSI, to be arbitrary and capricious. Hayes II, at *12. Additionally, the court dismissed Hayes' claim for common law trespass. Id.

The court instructed the parties to submit supplemental briefing on the appropriate remedy. Hayes II, at *11; Pl.'s Remedies Br., ECF No. 105 (Jan. 16, 2024) ("Hayes Remedy Br."); Remedies Br. of Non-Federal Defs., ECF No. 107 (Feb. 12, 2024) ("Warrior Remedy Br."); Federal Defs.' Br. on Remedies, ECF No. 116 (Feb. 15, 2024) ("Gov. Remedy Br."); Combined Reply Br., ECF No. 125 (Mar. 4, 2024) ("Hayes Remedy Reply Br."); Surreply on Remedies, ECF No. 127 (Mar. 12, 2024) ("Gov. Remedy Reply Br."). The Osage Minerals Council ("OMC") filed an Amicus Brief before the court. Amicus Br. of Osage Mineral Council, ECF No. 109 (Feb. 12, 2024) ("OMC Remedy Br.").[1]

---

[1] The OMC's brief includes an argument that because the OMC is not a party to this case, the court cannot grant certain remedies that Hayes requested. OMC Remedy Br. at 15–17. As the court will not grant those remedies, the court does not reach this argument.

For the reasons set forth below, the court finds that the appropriate remedy is to remand the approval of the Leasing PEA and the FONSI, as well as the decision to approve the two leases at issue here, to the BIA without vacatur. Further, the court finds that an injunction is inappropriate.

In addition to the briefing on remedy, Hayes filed a motion to reconsider the court's dismissal of the claim for trespass. Pl.'s Mot. Recons. Ct.'s Dismissal of Pl.'s Claim for Trespass, ECF No. 106 (Jan. 19, 2024) ("Hayes MTR"). In its motion, Hayes argues "that this was essentially a bifurcated lawsuit," and that the court should have waited to address the trespass claim until after the court decided the NEPA claim. Id. at 2–3. The court reconsiders the trespass claim here and finds that it is not ripe.

## BACKGROUND

Although the court presumes familiarity with the facts as set out in Hayes II, the court briefly summarizes the relevant history for ease of reference. Hayes is the owner of the surface rights to approximately 475 acres of land in Osage County. Pl.'s Opening Br. at 5, ECF No. 47 (Apr. 14, 2017). The subterranean rights of that land, however, are held in trust by the Osage Nation and managed by the Osage Agency within the BIA. Act of June 28, 1906, Pub. L. No. 59-321, § 3, 34 Stat. 539, 543–44.

In early 2012, the Osage Nation and Chaparral Energy, LLC ("Chaparral") entered into an oil and gas mining lease ("Lease 22411") for mineral rights located beneath the Hayes estate. Administrative Record at 577–79, ECF Nos. 31–42 (Mar. 15, 2017) ("AR"). Shortly thereafter, the Superintendent of the Osage Agency approved Lease 22411 without conducting a NEPA analysis. Id. In early January

2013, the Osage Nation and Chaparral entered into a second oil and gas mining lease ("Lease 22770"), for additional mineral rights beneath the Hayes estate. AR at 749–51. The Superintendent of the Osage Agency approved Lease 22770, again without conducting a NEPA analysis. Id.

Shortly after the approvals of Leases 22411 and 22770, the BIA began two NEPA analyses: a leasing specific EIS ("Osage EIS") and a Leasing PEA. AR at 241, 446. Neither the Osage EIS nor the Leasing PEA included site-specific analysis,[2] as per the BIA, "the leasing action is solely administrative in nature and involves no ground disturbing activities, [thus] no impacts [will] occur . . . ." See AR at 245; see also Hayes Remedy Br., Ex. 2 at ES-1–2 ("Osage EIS"). Nonetheless, while the Osage EIS and Leasing PEA were in progress, nine wells were produced on land covered by Lease 22411, and two were produced on land covered by Lease 22770. See AR at 660, 670. On November 26, 2014, the BIA completed the Leasing PEA and issued a FONSI. AR at 302, 306.

On March 29, 2016, the court issued an opinion and order vacating Leases 22411 and 22770 due to the BIA's failure to comply with NEPA. Hayes v. Chaparral Energy, LLC, 180 F. Supp. 3d 902, 915 (N.D. Okla. 2016), rev'd and vacated as moot sub nom. Hayes v. Osage Minerals Council, 699 Fed. Appx. 799 (10th Cir. 2017) ("Hayes I"). Three months later, under 25 C.F.R. § 226.15(b) (2016), the BIA retroactively approved Leases 22411 and 22770 back to January 3, 2013, under the

---

[2] Site-specific analysis refers to the agency's consideration of the likely impacts of a project at a site-specific, as opposed to a project-wide, level. See New Mexico ex rel. Richardson v. BLM, 565 F.3d 683, 716–19 (10th Cir. 2009).

Leasing PEA.  AR at 699–700, 826–27.  Despite the fact that eleven wells had already been drilled on Hayes' land without site-specific analysis, these retroactive approvals contained no new NEPA analysis to supplement the Leasing PEA.  See AR at 599, 676, 689.

On September 30, 2016, Hayes filed the instant action, challenging the Leasing PEA and FONSI, the retroactive approvals of Leases 22411 and 22770, and other matters.  Compl., ECF No. 2 (Sept. 30, 2016); Pl.'s First Am. Compl., ECF No. 19 (Nov. 15, 2016) ("Am. Compl.").  The court issued an opinion and order on November 7, 2023, declaring the Leasing PEA and FONSI, and the retroactive approvals of Leases 22411 and 22770, to be arbitrary and capricious.  Hayes II, at *12.  The court requested supplemental briefing on remedies, which has concluded.  Id., at *11.  Now the court considers whether to vacate or remand the approval of the Leasing PEA, the FONSI, and the retroactive approvals of Leases 22411 and 22770, and whether an injunction is appropriate.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over this matter under 28 U.S.C. § 1331 (2018), and 5 U.S.C. §§ 701–706 (2018) (the "APA").  The APA mandates that a reviewing court "hold unlawful and set aside agency action, findings, and conclusions" that fail to comply with statutory, procedural, or constitutional requirements or that are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706.

Additionally, the court has supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III" of the Constitution. 28 U.S.C. § 1367(a) (2018). Supplemental jurisdiction includes claims arising from joinder. Id. Therefore, this court has supplemental jurisdiction over the state law claim of trespass arising out of the lease disputes.

## DISCUSSION

### I.   APA claims

Concerning Leases 22411 and 22770, Hayes argues the court should vacate the retroactive approval of the leases; issue an injunction to "shut-in" the wells and stop operations on the land covered by the leases until the BIA approves leases with site-specific analysis; and retain jurisdiction over these proceedings until the agency fully complies. Hayes Remedy Br. at 15. Hayes does not argue or allege, however, that the BIA is unlikely to be able to cure the deficiency if given the opportunity. See id. The government contends that the BIA's error is curable on remand and that remand is the appropriate remedy. Gov. Remedy Br. at 11–14. Specifically, the government asserts that the BIA will conduct "site-specific NEPA review on remand" per the court's instruction. Gov. Remedy Br. at 13–14.

Similarly, the government argues that the deficiency in the Leasing PEA and FONSI can be remedied on remand. Gov. Remedy Br. at 10–14. Hayes did not address how the court should treat the Leasing PEA and FONSI, simply stating that

it did not request that the court vacate the Leasing PEA and FONSI.  See Hayes Remedy Br.; Hayes Remedy Reply Br. at 6.

### A. Remand, rather than vacatur, is the appropriate remedy

Turning to whether the court should remand or vacate, the Tenth Circuit has adopted the test set out by the D.C. Circuit in Allied-Signal.  Diné Citizens Against Ruining Our Env't v. Haaland, 59 F.4th 1016, 1049 (10th Cir. 2023) (citing Allied-Signal, Inc. v. U.S. Nuclear Regul. Com'n, 988 F.2d 146, 150–51 (D.C. Cir. 1993)). Under the test, "courts must consider two factors—(1) 'the seriousness of the [agency action's] deficiencies (and thus the extent of doubt whether the agency chose correctly),' and (2) 'the disruptive consequences of an interim change that may itself be changed.'"  Id. (quoting Allied-Signal, 988 F.2d at 150–51).  Put otherwise, the court "must determine whether there is 'at least a serious possibility that the [agency] will be able to substantiate its decision on remand,' and whether vacatur will lead to impermissibly disruptive consequences in the interim."  Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs, 282 F. Supp. 3d 91, 97 (D.D.C. 2017) (quoting Nat'l Parks Conservation Ass'n v. Jewell, 62 F. Supp. 3d 7, 20 (D.D.C. 2014)).

In the context of Diné, the first factor referred to "whether BLM chose correctly to reaffirm the FONSI, not whether it chose correctly to approve the drilling permits." Diné Citizens, 59 F.4th at 1049 (citing Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs, 985 F.3d 1032, 1052 (D.C. Cir. 2021), cert. denied sub nom. Dakota Access, LLC v. Standing Rock Sioux Tribe, — U.S. —, 142 S. Ct. 1187 (2022)).  Here, the

question is whether the BIA chose correctly to issue the FONSI and to approve Leases 22411 and 22770.

       1.   <u>Leases 22411 and 22770</u>

Hayes asserts that the history of the litigation between the parties illustrates the seriousness of the BIA's failure to comply with NEPA, and that the general presumption of vacating overrides any disruptive consequences here. Hayes Remedy Br. at 5–7. The history of the case, however, is not as compelling as Hayes asserts. In <u>Hayes I</u> the court found that the BIA could not use any categorical exclusion[3] to approve leases of the Osage Mineral Estate. <u>Hayes I</u>, at 910. Additionally, the court found that the 1979 Environmental Assessment was not suitable to support the approval of the drilling permits in part because it lacked site-specific analysis. <u>Id.</u> at 910–13. <u>Hayes I</u> does not instruct the BIA to conduct site-specific analysis at the leasing stage, nor does it address the proper procedure when retroactively approving a lease. <u>See id.</u> On its face the Leasing PEA complies with the court's order in <u>Hayes I</u> as the Leasing PEA requires site-specific analysis prior to ground disturbing activities. <u>See</u> AR at 239–301; <u>see also</u> <u>infra</u> 10–11.

Additionally, Hayes argues that the BIA has conceded the seriousness of the deficiency by agreeing to conduct site-specific analysis on remand. Hayes Remedy

---

[3] "In certain narrow instances, . . . an agency is not required to prepare either an environmental assessment or an environmental impact statement. This occurs when the proposed action falls within a categorical exclusion, <u>i.e.</u>, those actions predetermined not to 'individually or cumulatively have a significant effect on the human environment.'" <u>Utah Env't Cong. v. Dale Bosworth</u>, 443 F.3d 732, 736 (10th Cir. 2006) (citing 40 C.F.R. § 1508.4).

Reply Br. at 4.  The court is not persuaded by Hayes' argument.  In prior cases, the court has found it relevant whether the agency is likely to be able to support its decision on remand, not whether the agency requested a remand.  See, e.g., Friends of the Earth v. Haaland, 583 F. Supp. 3d 113, 157–61 (D.D.C. 2022) ("By excluding foreign consumption from its emissions analysis, BOEM reached a conclusion that was in direct tension with—if not completely contradictory to—its own finding in the very same report that the No Action Alternative would result in a significant decrease in foreign consumption. . . . The Court is doubtful, especially given the multiple opportunities at which BOEM could have remedied this error and did not, that it can remedy that misstep on remand.").  Hayes has neither made specific factual allegations nor presented evidence to indicate that the agency may reach a different result here.  Hayes Remedy Reply Br. at 4.  The government, however, has represented that upon completion of appropriate NEPA review on remand, "it is probable that the Leases can remain in effect."  Gov. Remedy Br. at 12.

The government argues that the deficiency here is limited.  Id.  The court agrees, as it is specific to the retroactive approval process and the BIA's failure to confirm that site-specific analysis occurred prior to ground disturbing activities as the lease required.  Hayes II, at *9–11.  Additionally, the deficiency for the two leases is limited to only eleven wells.  Id. at *3 (citing AR at 599, 676, 689).

Vacating in the interim would likely cause financial harm to the operator and potentially damage the oil reservoir itself.  See Warrior Remedy Br. at 3.  Hayes asserts any harm is only speculative, and that "a pause before production is precisely

what NEPA requires." Hayes Remedy Reply Br. at 5. This would not, however, be a pause <u>before</u> production as Hayes asserts, but a pause <u>during</u> production. Accordingly, the court finds that the harms listed by the non-federal defendants are real possibilities. Thus, considering the limited scope of the deficiency, the lack of specific allegations or evidence raising doubt as to the agency's ability to approve its decision on remand, and the potential financial and environmental harm from vacating, the approvals of Leases 22411 and 22770 will be remanded to the BIA so that the agency may conduct site-specific analysis.

2. <u>The Leasing PEA and FONSI</u>

The court lacks sufficient information to fully evaluate the seriousness of the BIA's deficiency in approving the Leasing PEA and FONSI as the extent of the impact of the deficiency is unclear. According to an affidavit from the current Superintendent of the Osage Agency, Adam M. Trumbly, in total the BIA has approved 34 leases in reliance on the Leasing PEA and FONSI, and 94 leases in reliance on the Osage EIS and ROD. Declaration of Adam M. Trumbly at ¶ 22–23, ECF No. 108-1 (Feb. 12, 2024) ("Trumbly Declaration"). Of those 128 leases, the evidence before the court indicates that the BIA approved only two retroactively.

Although the Leasing PEA fails to include site-specific analysis and does not include a "No Surface Occupancy" stipulation, its terms do outline steps to ensure no ground disturbing activity occurs prior to that analysis. <u>See</u> AR at 242 (prohibiting "surface disturbance of any kind" until "all required clearances, consultations, determinations, easements, leases, permits, and surveys are in place"); <u>see also</u> <u>Hayes</u>

II, at *8.  In the context of the retroactive approvals of Leases 22411 and 22770, the language of the Leasing PEA is insufficient.  Nevertheless, no evidence has been placed before the court to indicate the language was insufficient for the other 32 leases approved under the Leasing PEA and FONSI.  Additionally, no specific allegations or evidence have been presented to the court to indicate that the FONSI was wrongly issued.  See, e.g., Standing Rock Sioux Tribe, 985 F.3d at 1050–51.

Evidence does exist, however, to indicate that the disruptive consequences of vacatur would be significant.  The BIA would need to cease operation on all 34 leases approved under the Leasing PEA and FONSI, and conduct new site-specific NEPA review, new Endangered Species Act review, and new National Historic Preservation Act review for each lease.  Trumbly Declaration at ¶ 10, 25.  This would not only temporarily shut down wells operating on these leases, but wells that use resources located on land covered by those leases.  Id. at ¶ 18.

The overarching purpose of NEPA is to ensure that an adequate environmental assessment is conducted prior to major federal action significantly affecting the quality of the human environment.  See Biodiversity Conservation Alliance v. Jiron, 762 F.3d 1036, 1050–51 (10th Cir. 2014) (citing Dep't of Transp. v. Pub. Citizen, 541 U.S. 752, 756 (2004)).  Under Richardson, the Leasing PEA is deficient.  Hayes II, at *7–9; see New Mexico ex rel. Richardson v. BLM, 565 F.3d 683, 703 (10th Cir. 2009).  Nevertheless, because the deficiency can be remedied on remand and site-specific analysis did generally occur prior to ground disturbing activities, the deficiency here is not serious enough to warrant vacatur.  Thus, the approval of the Leasing PEA and

the FONSI will be remanded to the BIA to conduct site-specific analysis as required by Richardson and will include, at a minimum, site-specific analysis of any drilling sites retroactively approved under the authority of the Leasing PEA without a supplemental environmental assessment that includes site-specific analysis.

### B. An injunction is inappropriate here

Hayes argues that an injunction is necessary: first to safely shut the wells, and second to ensure the BIA appropriately follows the court's direction after years of litigation on this issue. Hayes Remedy Br. at 15. The government asserts these reasons are insufficient to satisfy the standards for granting injunctive relief, particularly in view of the BIA's proposal to conduct site-specific NEPA review on remand. Gov. Remedy Br. at 26–27.

To show that injunctive relief is warranted, a party must demonstrate

(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 156–57 (2010) (quotation marks omitted). In the light of evidence showing that the BIA's decisions will likely be supported on remand, and the total lack of evidence showing that the deficiencies in the leases and Leasing PEA and FONSI have resulted in environmental harm, an injunction is not warranted.

Here, the injuries as articulated by Hayes in the Amended Complaint are predominately the "increased risk of actual, threatened and imminent environmental

harm to Hayes' property, as well as an increased risk of harm to Hayes' daughter's medical condition." Am. Compl. at ¶ 109. Hayes argues that without a site-specific study it is impossible to fully assess the harm; yet, Hayes has not presented the court with a single piece of evidence to show that any harm has occurred or that leasing has increased the aforementioned risks. See Hayes Remedy Reply Br.

Hayes argues that as monetary damages are not available here, an injunction is the only appropriate relief. Hayes Remedy Reply Br. at 12–13. Relief, however, is not limited to monetary damages and includes remanding without vacatur. See Monsanto, 561 U.S. at 156. Hayes argues such a remedy may "incentivize the BIA to continue its practice of 'approve first, study later.'" Hayes Remedy Reply Br. at 13. Nevertheless, remand could remedy the procedural flaw Hayes complains of and provide site-specific analysis for these leases.

"[W]hen assessing the balance of hardships, financial harms should be considered but 'financial concerns alone generally do not outweigh environmental harm,' especially if the financial harm is 'self-inflicted.'" Diné Citizens, 59 F.4th at 1050 (quoting Valley Cmty. Preservation Comm'n v. Mineta, 373 F.3d 1078, 1086 (10th Cir. 2004)). Here, there is no evidence of environmental harm, just the risk of such with no evidence to indicate that the risk is particularly high or imminent. As articulated above, however, there would be economic and potentially environmental harm if the court were to issue an injunction to shut in the wells. Supra at 9–10.

Finally, Hayes argues that the "public interest favors compliance with NEPA." Hayes Remedy Reply Br. at 14 (citing Davis v. Mineta, 302 F.3d 1104, 1116 (10th Cir.

2002) abrogated on other grounds by Diné Citizens Against Ruining Our Env't v. Jewell, 829 F.3d 1276 (10th Cir. 2016)).  The case Hayes cited for support, however, involved an injunction prior to the commencement of construction.  Davis, 302 F.3d at 1109–10, 1116.  The Tenth Circuit has clarified that, where a project has already begun, the public interest in continuing a project is much stronger.  Valley Cmty. Preservation Comm'n v. Mineta, 373 F.3d 1078, 1087 (10th Cir. 2004).  Here, the project is not only continuing, but the wells have already been drilled.  AR at 599, 676, 689.  Issuing an injunction would create economic harm, risk damaging the reservoir, and would have no impact upon the BIA's ability to comply with NEPA. Thus, the public interest weighs against issuing an injunction.

Ultimately, Hayes' request for injunction fails due to the total lack of evidence or arguments that the BIA will be unable to complete site-specific analysis on remand.  Thus, Hayes has not demonstrated that he will suffer irreparable harm without the protection of an injunction and the factors taken together weigh against granting an injunction.  Hayes' request will be denied.

## II.   **The court reconsiders the trespass claim and dismisses it**

Hayes argues that the court should have waited to address the trespass claim until after the court decided the APA claim.  Hayes MTR at 2–3.  The court disagrees as to Hayes' procedural argument as there was no order setting forth a sequence for

14

consideration of claims in this case.  Nevertheless, the court reconsiders the basis for dismissal.[4]

Article III limits the federal judicial power to resolving "Cases" and "Controversies."  U.S. Const. art. III, § 2.  Based on "the separation-of-powers principles underlying that limitation, we have deduced a set of requirements that together make up the 'irreducible constitutional minimum of standing.'"  Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 125 (2014) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).  To establish Article III standing, Hayes "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (quoting Lujan, 504 U.S. at 560–61).

"The crucial question is whether granting a present determination of the issues offered . . . will have some effect in the real world."  Smith v. Becerra, 44 F.4th 1238, 1247 (10th Cir. 2022) (citation omitted).  An action is proper when it settles "some dispute which affects the behavior of the defendant toward the plaintiff." Hewitt v. Helms, 482 U.S. 755, 761 (1987); see also Jordan v. Sosa, 654 F.3d 1012,

---

[4] In the absence of a motion to dismiss, the court may consider an issue sua sponte for the purpose of evaluating jurisdiction.  See Skrzypczak v. Kauger, 92 F.3d 1050, 1052 (10th Cir. 1996) ("We are obliged to address standing sua sponte because it involves a constitutional limitation on a federal court's jurisdiction, and federal courts are under an independent obligation to examine their own jurisdiction." (internal quotations and citations omitted)).  Additionally, Hayes was arguably on notice that this issue was currently live as the non-federal defendants raised it in their initial briefing.  Answer Br. of Non-Federal Defs. at 4, ECF No. 52 (May 19, 2017).

1024 (10th Cir. 2011) ("[A] court will not entertain a claim for injunctive relief where the allegations 'take[ ] [it] into the area of speculation and conjecture.'" (citation omitted)).  In <u>Hayes II</u>, the court analyzed whether damages were available.  <u>Hayes II</u>, at *12.  Hayes now contends that his claim should not be dismissed as he seeks a declaratory judgment and an injunction.[5]  Hayes MTR at 7–8; Am. Compl. at ¶¶ 140–46.  Accordingly, the court must consider whether there is an adequate case or controversy that would provide the necessary jurisdiction without the potential for damages.

Hayes alleges that standing exists because the non-federal defendants are currently operating on its land based on the leases at issue in this case.  Am. Compl. at ¶¶ 142–43.  This action, however, is only unlawful if the court vacates the approvals of Leases 22411 and 22770.  Ergo, Hayes' theory is based on two hypotheticals, first that the approvals of the leases are vacated, and second that the non-federal defendants would continue operations after said vacatur.  When a controversy relies on a hypothetical, the court must consider whether the issue is ripe.

Constitutional ripeness in the Tenth Circuit focuses on "whether the harm asserted has matured sufficiently to warrant judicial intervention."  <u>Kan. Jud. Rev.</u>

---

[5] The non-federal defendants contend that Hayes has consented to their entry and has accepted compensation for their activities.  Answer Br. of Non-Federal Defs. at 5, ECF No. 52 (May 19, 2017).  If the compensation was at market rate and in good faith, this would preclude Hayes from recovering any compensatory damages or exemplary damages.  <u>See</u> <u>Barnes v. Winona Oil Co.</u>, 200 P. 985, 987 (Okla. 1921); <u>see also</u> <u>Dilworth v. Fortier</u>, 405 P.2d 38, 50 (Sup. Ct. Ok. 1964).

v. Stout, 519 F.3d 1107, 1116 (10th Cir. 2008).  "If a threatened injury is sufficiently 'imminent' to establish standing, the constitutional requirements of the ripeness doctrine will necessarily be satisfied."  North Mill Street, LLC v. City of Aspen, 6 F.4th 1216, 1229 (10th Cir. 2021) (quoting Awad v. Ziriax, 670 F.3d 1111, 1124 (10th Cir. 2012)).  The injury alleged here is not imminent, as the court has not vacated the leases.  Infra at 17.  Further, Hayes has neither alleged nor provided evidence to indicate that the non-federal defendants will maintain their presence on the land if the leases are vacated in the future.  See Am. Compl.; Hayes MTR.

Without a claim of imminent injury, the court cannot reach Hayes' request for either a declaratory judgment or an injunction.  Thus, the court concludes that Hayes' action is not ripe.

## CONCLUSION

For the foregoing reasons, the court **REMANDS** the approval of the Leasing PEA and the FONSI for revised NEPA analysis; **REMANDS** the approvals of Leases 22411 and 22770 for revised NEPA analysis; and **DISMISSES** the claim of trespass without prejudice for lack of standing.  The parties are **ORDERED** to file a joint status report 60 days hereof.  The report will include an outline of the steps the BIA has taken to comply with this remand and a timeline for further action.  The court will retain jurisdiction over this matter until all obligations are satisfied.

/s/ Jane A. Restani
Jane A. Restani, Judge

Date:  May 1, 2024
New York, New York